410 So.2d 648 (1982)
CORAL REEF NURSERIES, INC. and Santana Groves, Inc., Petitioners, Cross-Respondents,
v.
The BABCOCK COMPANY, a Florida Corporation, et al., Respondents, Cross-Petitioners,
v.
DADE COUNTY, Florida, a Political Subdivision, Respondent.
No. 80-1979.
District Court of Appeal of Florida, Third District.
March 9, 1982.
*649 Williams, Salomon, Kanner, Damian, Weissler & Brooks and Gary S. Brooks, Miami, for Coral Reef Nurseries, Inc., and Santana Groves, Inc.
Greenberg, Traurig, Askew, Hoffman, Lipoff, Quentel & Wolff and Alan C. Gold and Clifford A. Schulman, Miami, for The Babcock Company.
Robert A. Ginsburg, County Atty. and Stanley B. Price, Asst. County Atty., for Dade County, Florida.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Coral Reef Nurseries, Inc. and Santana Groves, Inc. are owners of agricultural property adjacent to and in the vicinity of two large tracts of land owned by The Babcock Company.[1]
On July 20, 1977, Babcock filed an application requesting a zoning change for the *650 entirety of the property to EU-M (half-acre estates) from the existing GU (interim use) classification. In January 1978, the Board of County Commissioners of Dade County denied the application, finding, inter alia, that the subject property was viable for use as agricultural land and that the application failed to adequately address the economic impact which the loss of agricultural land would have on the community. Babcock petitioned the Circuit Court, Appellate Division, for certiorari review of the Commission's action.[2]
While that proceeding was pending, Babcock filed two new rezoning applications. These applications (one for each tract) substantially differed from the preceding application in that they addressed the concerns raised by the Commission at the earlier hearing and sought to minimize the impact on the area's future growth and development. Among other things, the new applications (1) were accompanied by a Restrictive Covenant which called for park and school dedications and for the construction of new roadways; (2) provided for rainbow zoning with low density on the western and southern borders (adjacent to agricultural land) and higher density on the eastern fringe (adjacent to residential land); (3) called for no roadways on the western and southern boundaries; (4) provided for sewer mains to be brought only to the northeastern portion of the tracts with the western and southern borders to be serviced solely by septic tanks. Each of these new elements was calculated to discourage future growth beyond that envisioned by the county planners in the 1985 Master Plan development area.
In July 1979, a year and a half after the denial of Babcock's initial application, the Board of County Commissioners, finding that there were changes in the area of the subject property and in the requests justifying a decision favorable to Babcock, approved the new applications. This time, Coral Reef and Santana, the opponents of the zoning change, appealed to the Appellate Division of the Circuit Court.[3] Babcock's petition for certiorari and the appeals of Coral Reef and Santana were consolidated for decision.
In July 1980, the Circuit Court, deciding, inter alia, that (1) both the 1978 action of the Commission denying Babcock's rezoning application and the 1979 action of the Commission granting Babcock's rezoning application were fairly debatable[4]; and (2) the Commission action in 1979 was not barred by the doctrine of administrative res judicata, because (a) zoning actions are "legislative" in nature, and (b) the County's zoning code permits refiling after a prescribed time[5]; upheld the 1979 zoning change.
Coral Reef and Santana petitioned us to review the Circuit Court's ruling by certiorari. Asserting that certiorari was not the proper method of review, Babcock moved to dismiss the petition, cross-appealed, but as a safety measure, cross-petitioned for a writ of certiorari. Dade County, designating itself as cross-appellee or cross-respondent, answered. We have jurisdiction to entertain the petition and cross-petition for certiorari.[6] *651 See Fla.R.App.P. 9.030(b)(2)(B); O'Connor v. Dade County, 410 So.2d 605 (Fla. 3d DCA 1982); City of Deerfield Beach v. Vaillant, 399 So.2d 1045 (Fla. 4th DCA 1981); Save Brickell Avenue, Inc. v. City of Miami, 393 So.2d 1197 (Fla.3d DCA 1981).
Coral Reef and Santana contend that the Circuit Court was correct in holding that the Commission's 1978 decision denying rezoning was fairly debatable, but incorrect in holding that administrative res judicata did not bar the Commission's approval of rezoning in July 1979.[7] Simply stated, they say that only the 1978 denial of rezoning should stand affirmed.
Babcock contends that the Circuit Court was correct in holding that administrative res judicata did not bar the Commission from taking its subsequent action, and that, therefore, the 1979 approval of rezoning should stand affirmed. But if administrative res judicata is held to apply to this zoning matter, then, says Babcock, the doctrine does not act as a bar here because of the substantial and material changes in the application and circumstances after the 1978 denial of rezoning. Babcock's fallback position is that if no such changes are found to exist and administrative res judicata bars the 1979 rezoning, then the 1978 denial of rezoning was not fairly debatable and should be reversed.
The County in some respects disagrees with Coral Reef and Santana; in other respects, with Babcock. It says (disagreeing with Babcock) that the Circuit Court was correct in holding that both the 1978 and 1979 actions of the Commission were fairly debatable, and incorrect in holding that administrative res judicata does not apply to zoning matters. But (disagreeing with Coral Reef and Santana) the County says that substantial and material changes in the application and circumstances prevent the doctrine of administrative res judicata from acting as a bar in this case, and the 1979 rezoning should be affirmed. Thus, the County suggests that we affirm the ruling of the Circuit Court, but not entirely for the reasons given by that court. Since we agree that both the 1978 and 1979 actions of the Commission were fairly debatable and, absent other considerations, must be upheld, our discussion will be limited to the applicability of administrative res judicata to the 1979 action of the Commission.[8]

I

A.
The doctrine of administrative res judicata is firmly entrenched as part of the decisional law of the State of Florida in relation to zoning cases. See Wager v. City of Green Cove Springs, 261 So.2d 827 (Fla. 1972); City of Miami Beach v. Prevatt, 97 So.2d 473 (Fla. 1957); Burger King Corporation v. Metropolitan Dade County, 349 So.2d 210 (Fla.3d DCA 1977); Taub v. Metropolitan Dade County, 296 So.2d 566 (Fla.3d DCA 1974); Baker v. Metropolitan Dade County, 296 So.2d 544 (Fla.3d DCA 1974); Metropolitan Dade County v. Crowe, 296 So.2d 532 (Fla.3d DCA 1974); Metropolitan Dade County Board of County Commissioners v. Rockmatt Corporation, 231 So.2d 41 (Fla.3d DCA 1970). The doctrine

*652 "... is applicable to rulings or decisions of administrative bodies (citation omitted), and to rulings of such bodies dealing with zoning regulations unless it can be shown that since the earlier ruling thereon there has been a substantial change of circumstances relating to the subject matter with which the ruling was concerned, sufficient to prompt a different or contrary determination... ." Metropolitan Dade County Board of County Commissioners v. Rockmatt Corporation, supra, 231 So.2d at 44.
Babcock argues that the applicability of the doctrine to zoning cases depends on whether the action of the administrative body is legislative or quasi-judicial in nature, and that only in the latter instance does the doctrine apply. According to Babcock, since applications for zoning district boundary changes in Florida have traditionally and uniformly been said to be "legislative" actions of the zoning body identical in legal force and effect to the original legislative action in enacting the zoning ordinance sought to be changed, and only applications for special exceptions or variances are said to be "quasi-judicial" in nature, administrative res judicata should not apply to the zoning change here.
We reject Babcock's argument for two reasons. First, its contention that administrative res judicata does not apply to "legislative" zoning changes, as distinguished from "quasi-judicial" special exceptions or variances, is belied by abundant case law to the contrary.[9]See Wager v. City of Green Cove Springs, supra; Burger King Corporation v. Metropolitan Dade County, supra; Taub v. Metropolitan Dade County, supra; Baker v. Metropolitan Dade County, supra; Metropolitan Dade County v. Crowe, supra; Aronovitz v. Metropolitan Dade County, 290 So.2d 536 (Fla.3d DCA 1974); Metropolitan Dade County v. Jennings, 196 So.2d 33 (Fla.3d DCA 1967). See also Jet Air Freight v. Jet Air Freight Delivery, Inc., 264 So.2d 35 (Fla.3d DCA 1972); Rubin v. Sanford, 168 So.2d 774 (Fla.3d DCA 1964); Carol City Utilities, Inc. v. Miami Gardens Shopping Plaza, Inc., 165 So.2d 199 (Fla.3d DCA 1964).
Second, and far more important, it is the character of the administrative hearing leading to the action of the administrative body that determines the label to be attached to the action and, in turn, determines the applicability of the doctrine of administrative res judicata. The procedural due process which is afforded to the interested parties in a hearing on an application for rezoning is identical to that afforded in a hearing on variances or special exceptions. See Section 33-36, Code of Metropolitan Dade County. Each contains the safeguards of due notice, a fair opportunity to be heard in person and through counsel, the right to present evidence, and the right to cross-examine adverse witnesses; and it is the existence of these safeguards *653 which makes the hearing quasi-judicial in character and distinguishes it from one which is purely legislative.[10]See Harris v. Goff, 151 So.2d 642 (Fla.1st DCA 1963). The procedure utilized by Dade County in zoning matters such as that involved in the present case has quite clearly been recognized as quasi-judicial. Centex Homes Corp. v. Metropolitan Dade County, 318 So.2d 149 (Fla.3d DCA 1975); Baker v. Metropolitan Dade County, supra; Dade County v. Carmichael, 165 So.2d 227 (Fla.3d DCA 1964). That being the case, the doctrine of administrative res judicata applies.

B.
The Circuit Court ruled that the doctrine of administrative res judicata was inapplicable on the separate ground that Section 33-304(a), Code of Metropolitan Dade County, specifically provides for the filing of a subsequent application after the lapse of one year from the denial of the first.
The Code provision in pertinent part reads:
"... Upon the withdrawal or final denial of an application in whole or in part, for either a district boundary change, a use variance, a use special exception, an unusual use or a new use, a period of one year must run prior to the filing of subsequent application for any of the above types of use changes affecting the same property or any portion thereof. ..." (emphasis supplied).
Contrary to Babcock's contention and the Circuit Court's ruling, Section 33-304(a) does not provide relief from the doctrine of administrative res judicata. Instead, the provision is one which assures the County that it need not process, entertain, or be beleaguered by reapplications until and unless the waiting period has passed and assures opponents of the application that at least for some fixed period of time they may rest easy. While the reapplication must be received and heard when made more than a year after denial, whether it may then be rejected by the application of administrative res judicata is an entirely separate issue to be determined by the Commission after evaluating the substantiality of the changes, if any, in the application and circumstances.
Neither Matthews v. State ex rel. St. Andrews Bay Transportation Company, 111 Fla. 587, 149 So. 648 (1933), nor Dade County v. Mitchell, 188 So.2d 359 (Fla.3d DCA 1966), upon which Babcock relies, compels a different conclusion. In Matthews, a statute prevented the Railroad Commission from entertaining a once-denied application for a certificate of public convenience and necessity "until the expiration of six months from the date of such denial." While the court held that an amended application showing a substantial change, and therefore not otherwise barred by res judicata, *654 could be entertained within the six-month period,[11] it did not hold that administrative res judicata could not be applied to defeat a second application made after the six months elapsed. In Dade County v. Mitchell, supra, this court, holding only that the County Commission's denial of rezoning was fairly debatable, reversed a decision of the trial court overturning the Commission's ruling. The opinion contains the trial court's conclusion, totally irrelevant to the holding and the subject of no discussion whatever, that "[t]he inclusion of the six month limitation in Section 33-304 of the Code of Metropolitan Dade County would seem to preclude the defense of res judicata in this case." 188 So.2d at 361. To the extent that we failed in the Mitchell case to at least footnote our disagreement with this conclusion of the trial court, we correct that failure now by stating that the trial court was wrong.

II
Having concluded that the doctrine of res judicata is applicable to the zoning matters under consideration, we observe the caveat that the doctrine "should be applied in zoning cases with great caution." City of Miami Beach v. Prevatt, supra.
"In fast growing areas, ... changes occur with great rapidity; it cannot, therefore, be said that even where the same parties are involved, an adjudication of the reasonableness of a zoning ordinance at any given time is necessarily res judicata or constitutes an estoppel by judgment in subsequent litigation between the same or different parties." Id. at 477.
Otherwise stated, in applying the doctrine of res judicata in zoning matters, the requirements thereof must be "liberally construed in favor of the applicant ... to provide the necessary flexibility to the zoning ordinance." Russell v. Board of Adjustment of Borough of Tenafly, 31 N.J. 58, 155 A.2d 83, 88 (1959). Where, then, there are changed conditions and new facts which did not exist at the time of the prior judgment of the Commission denying Babcock's rezoning application, administrative res judicata will not act as a bar to prevent the Commission from its later action.
In the present case, the Commission specifically found that subsequent to its earlier denial, there was a substantial change in circumstances and in the surrounding neighborhood which removed Babcock's applications from the bar of administrative res judicata. As we have noted, the 1979 applications differed substantially from the 1977 application in that, inter alia, they provided for larger lots (EU-1 and EU-S) in the south parcel to buffer the agricultural interest in the area; transferred units from the south parcel to the north parcel in order to graduate the degree of residential uses to the south; provided a buffer of large lots (EU-1) along the western boundary of the north parcel; and dispensed with the construction of roads on S.W. 168th Street and S.W. 157th Avenue, which (if constructed) could, in the future, lead to the urbanization of the agricultural and open area to the south and west. Additionally, the record before the Commission shows, for example, that since Babcock's 1977 application, (a) the Commission had rezoned 347 acres of proximately located land utilized for the production of winter vegetables from GU to RU-1 and RU-TH (permitting approximately 1,904 units); (b) there was an intensification of residential use on the property directly to the north of the Babcock property, for an additional 191 single-family units; (c) an increased need for single-family residential units within the area had occurred since 1978; and (d) *655 there was further evidence of industrialization and commercialization of the area.
The determination of the applicability of the res judicata doctrine is primarily within the province of the administrative body considering the matter in question, and that body's determination may only be overturned upon a showing of a complete absence of any justification therefor. Thus, a Board of Zoning Appeals has been held to be "undoubtedly invested with a liberal discretion in deciding whether to reverse one of its former decisions." Fiorilla v. Board of Appeals on Zoning of Town of Norwalk, 144 Conn. 275, 129 A.2d 619 (1957); Sipperley v. Board of Appeals on Zoning of Town of Westport, 140 Conn. 164, 98 A.2d 907 (1953). Indeed, one court has stated:
"Whether an application is to be rejected on the grounds of res judicata is in the first instance for the Board to determine. Even if the application is closely similar to a previous one, or identical with it but it is alleged that surrounding circumstances have changed or that experience has shown that prior denial was error ..., it is within the discretion of the Board whether to reject the application on the ground of res judicata, and the exercise of that discretion may not be overturned on appeal in the absence of a showing of unreasonableness." Mazza v. Board of Adjustment of the City of Linden, 83 N.J. Super. 494, 200 A.2d 505, appeal dismissed, 47 N.J. 161, 219 A.2d 615 (1964) (emphasis supplied).
Thus, an administrative body's determination that res judicata does not apply cannot be reversed unless that body has acted with "manifest" and "flagrant" abuse of discretion or by "arbitrary impulse, whim or caprice." Woodland Civic Association v. Brick Homes, Inc., 144 N.J. Super. 78, 364 A.2d 574 (1976); Application of American Seminary of The Bible, Inc., 104 N.Y.S.2d 660 (Sup.Ct.N.Y.), modified on other grounds, 280 App.Div. 792, 112 N.Y.S.2d 904 (1951). Here, the Commission found, and could reasonably so find, that changes in the application and in the surrounding area, see Baker v. Metropolitan Dade County, supra, had occurred between 1978 and 1979. We certainly cannot say that the Commission's determination in the present case constituted a manifest or flagrant abuse of discretion, and we will not, therefore, disturb that determination.
Accordingly, the petition and cross petition for certiorari are denied.
NOTES
[1] Babcock's property consists of two non-contiguous parcels of land in Dade County, Florida, separated by approximately 835 feet, comprising 384.58 acres. The northernmost parcel lies between S.W. 152nd Street and S.W. 160th Street and is bounded on the east by S.W. 147th Avenue and on the west by S.W. 157th Avenue. The southernmost parcel lies between S.W. 164th Street and S.W. 168th Street and is bounded on the east by S.W. 147th Avenue and on the west by S.W. 154th Avenue.
[2] Babcock simultaneously brought an independent action in the Circuit Court seeking to declare the Commission's action confiscatory. We are not informed of the current status of that action.
[3] Babcock took the position in the Circuit Court that Coral Reef and Santana had limited their appeal to the rezoning of the northern parcel. As did the Circuit Court, we reject this contention.
[4] The judgment of a legislative body contained in a zoning resolution is fairly debatable, and therefore is not to be disturbed by a court when the question whether the resolution serves the health, safety, morals or general welfare of the public is open to dispute on grounds that make sense supported by competent substantial evidence. See Dade County v. United Resources, Inc., 374 So.2d 1046 (Fla. 3d DCA 1979).
[5] One member of the three-judge Circuit Court panel dissented, expressing the view that the doctrine of administrative res judicata does apply to zoning decisions and barred the Commission's 1979 action. As will be seen, infra, we agree with the dissenter's view that administrative res judicata applies to this zoning decision, but disagree that the doctrine served to bar the subsequent rezoning.
[6] We note that Babcock's petition to the Florida Supreme Court to prohibit us from exercising jurisdiction was denied without opinion. The Babcock Company v. District Court of Appeal of Florida, Third District, 399 So.2d 1140 (Fla. 1981). Since we cannot conclude that the sole possible ground of the denial was the lack of merit of Babcock's jurisdictional contention, we give the denial no res judicata effect. Compare, e.g., Public Employees' Relations Commission v. District School Board of De Soto County, 374 So.2d 1005 (Fla.2d DCA 1979), with Hicks v. State, 156 So.2d 22 (Fla. 1st DCA 1963). See generally Annot., Judgment Granting or Denying Writ of Mandamus or Prohibition as Res Judicata, 21 A.L.R.3d 206 (1968).
[7] Since Coral Reef and Santana contend that the January 1978 decision was fairly debatable, they obviously do not contend that the July 1979 decision was not fairly debatable.
[8] While Babcock says that it was absolutely entitled to rezoning in both 1978 and 1979, if administrative res judicata is no bar, the rezoning it obtained in 1979 will give it complete relief here, since Babcock has stipulated to be bound by its 1979 applications.
[9] Babcock concedes that there is abundant case law contrary to its position. It says, however, that all of the included cases overlook Matthews v. State ex rel. St. Andrews Bay Transportation Company, 111 Fla. 587, 149 So. 648 (1933), which, Babcock suggests, announces the rule that res judicata does not bar identical subsequent applications to administrative bodies. In our view, Matthews announces no such rule and indeed stands for the opposite proposition. In Matthews, the Union Bus Company's application for a certificate of public convenience and necessity was denied by the Railroad Commission on the ground that it did not appear to be exclusively interstate. A statute prevented the Commission from entertaining within six months any further application "covering the identical or similar routes." The Commission allowed Union to amend the application showing that it would not participate in any intrastate business. Its competitor, St. Andrews, obtained a writ of prohibition preventing the Commission from entertaining the application on the basis of the statute. The court held that the change in the application made the statute inapplicable and that "the Commission has the power to modify, and indeed, it is its duty to modify, its pre-existing orders, when new evidence is presented which warrants a change." (emphasis supplied). While the court stated that the first order of the Railroad Commission "is not res adjudicata of another application of exactly the same nature subsequently filed," the court's later declaration that a subsequent application "of the same character and substance" would be within the purview of the statute, compels us to read "same nature" as not meaning a substantially identical application, but only one generally pertaining to the application first denied.
[10] Where zoning hearings are not conducted with these due process guarantees, then the hearing can quite properly be called legislative, and the administrative decision is without res judicata effect.

"The common-law doctrine of res judicata, including the subsidiary doctrine of collateral estoppel, is designed to prevent the relitigation by the same parties of the same claims or issues. The reasons behind the doctrine as developed in the court system are fully applicable to some administrative proceedings, partially applicable to some, and not at all applicable to others. As a matter of principle, therefore, the doctrine should be applied to some administrative proceedings, modified for some, and rejected for others. "The Supreme Court has essentially agreed with this statement of principle in declaring that res judicata may apply `[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.' The prospect is that other courts will gradually conform to the basic principle thus enunciated." K. Davis, Administrative Law, § 18.10, at 371 (3d ed. 1972).
Thus, the enactment of comprehensive zoning plans, see, e.g., Central Bank & Trust Company v. Board of County Commissioners of Dade County, 340 So.2d 503 (Fla.3d DCA 1977), and amendments thereto to accommodate the confiscatory impact of the plan on a particular piece of property, see Oka v. Cole, 145 So.2d 233 (Fla. 1962), while accomplished pursuant to public hearing after published notice, are not accomplished pursuant to a hearing containing the full panoply of procedural due process rights and, therefore, are legislative in character, Harris v. Goff, 151 So.2d 642 (Fla. 1st DCA 1963), and res judicata neither prevents the enactment nor amendment.
[11] If the application were considered as "new" rather than "amended," this holding would appear to give the Commission the unilateral right to entertain the new application within the six-month period, despite the protest of the application's opponent. Such a holding may be warranted where it is the responsibility of the administrative body to assure that appropriate transportation be expeditiously established for the public. The statute, however, would certainly allow the Commission to reject out of hand "promiscuous successive applications of the same character and substance."